IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM C. BOND                          *
                                         *
            v.                           *    Civil No. JFM-07-1385
                                         *
KENNETH BLUM SR.
ERLENE BLUM
ALAN S. COHN                             *
ROBIN COHN                               *
KENNETH BLUM JR.                         *
DUDLEY F. B. HODGSON                     *
WILLIAM H. SLAVIN                        *
WILLIAM A. MCDANIEL JR.                  *
CAROLINE A. GRIFFIN                      *
MCDANIEL, BENNETT & GRIFFIN              *
MCDANIEL & GRIFFIN                       *
PAUL A. DORF                             *
ADELBERG, RUDOW, DORF &                  *
   HENDLER                               *
GERALD P. MARTIN                         *
MIRIAM PESSIN
RENT-A-WRECK OF AMERICA, INC.            *
                                    *****

## MEMORANDUM

The fee-paid *pro se* complaint for damages was filed by William C. Bond ("Bond"), a

resident of Baltimore, Maryland.   Bond sues sixteen defendants, including relatives by marriage,

private law firms and partners of same, and an automobile rental company. He claims that a

"fraud" has been perpetrated on the court, cites to Fed. R. Civ. P. 60(b), and alleges that 17

U.S.C. § 501, *et seq*. and several provisions of Title 18 have been violated.   Bond invokes the

---

[1]   See 18 U.S.C. §§ 1621-23, 1512, 372, 241-42, 402, 101, 2319, 1962, & 1964.  These statutes
relate to criminal counts of perjury, witness tampering, conspiracy to impede or injure an officer,
conspiracy to deprive of rights, contempt, infringement of a copyright, and racketeering, along with civil
remedies for prevention, restraint, and recovery of racketeering violations.

28 U.S.C. § 1338(a) jurisdiction of this court.[2]  The matter sets out alleged conspiracies among

defendants to obtain negative information on Bond by raiding his accounting and legal files and

his juvenile police report, which culminated in the alleged misappropriation and distribution of

his manuscript in a custody battle.  Bond raises one count of copyright infringement, three counts

of racketeering, and three counts of fraud

     To place some perspective as to the filing of this case, the court shall examine Bond's

prior federal civil complaint, the history of which is set out in *Bond v. Blum*, 317 F.3d 385 (4th

Cir. 2003).  In September of 2001, Bond filed a copyright infringement action under 17 U.S.C. §

501 against law firms and their clients, primarily alleging that his autobiographical manuscript

was impermissibly appropriated for use in a state court matter between his wife, Alyson Slavin

Bond, (nee' Blum), and her former husband, William Slavin, for exclusive custody of their three

children.[3]  *See Bond v. Blum, et al.*, Civil Action No. MJG-01-2600 (D. Md   Plaintiff filed the

---

[2]    Under 28 U.S.C. § 1338(a), the district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks Such jurisdiction shall be exclusive of the court of the states in patent, plant variety protection and copyright cases.

[3]    William Bond, formerly known as William Rovtar, was 17 in June of 1981, when he beat his father to death with a hammer in his grandparents' garage in Bainbridge Township, Ohio.  After Rovtar was arrested and detained in a juvenile detention facility in Ohio, he entered into a guilty-plea agreement in juvenile court with the result that in September 1981, he was transferred to the Sheppard and Enoch Pratt Hospital in Baltimore, Maryland, for psychological treatment. Rovtar was released in 1982. After his release he legally changed his name to William Bond.  *See Bond v. Blum*, 317 F.3d 385, 390 (4th Cir. 2003).  In 1987, Bond began to write *Self-Portrait of a Patricide: How I Got Away with Murder,* "the true story of and by William Bond," which he hoped to market to publishers for profit. The manuscript describes in detail how Bond planned and committed the murder of his father.  *Id.*  The manuscript has been characterized by Bond as a "highly fictionalized and stylized work" based on his "juvenile experience." *Id.*  Bond's effort to find a publisher for the manuscript was not successful and after revisions, a copy of the manuscript was given to Bond's attorney, Norman Pessin, to help obtain publication.  This bore no fruit and after Pessin passed away, his widow, Miriam Pessin retained a copy of the manuscript.  *Id.*  She had the manuscript in 2001, when she was contacted by Dudley Hodgson, a private investigator hired by Bond's wife's father, Kenneth Blum Sr., to look into Bond's background, and she gave the manuscript to Hodgson.  *Id.* at 391.  Hodgson made a copy of the manuscript and gave it to William Slavin and the attorneys representing him in the custody matter.  It was made an exhibit

action against Kenneth Blum Sr.;[4] Dudley F. B. Hodgson;[5] William Slavin; McDaniel, Bennett;

& Griffin; Adelberg, Rudow, Dorf & Hendler, LLC; Christopher W. Nicholson; and Kenneth

Blum Jr.

On November 27, 2001, judgment was entered in favor of all defendants and against

Bond. Bond's claims were dismissed with prejudice, with assessable costs to be awarded in

defendants' favor.    The Fourth Circuit affirmed the judgment of the court, but reversed and

remanded the matter on the limited issue of the award of attorney fees to defendant law firms.

The matter remains pending on this issue and numerous post-judgment motions filed by Bond.

When separating the chaff from the wheat, the allegations in this case clearly represent

Bond's attempt to litigate anew his copyright claims under 17 U.S.C. §§ 501, *et seq*. and/or to

vacate and reopen the aforementioned case.  Plainly dissatisfied with the decisions previously

entered by the district and circuit courts, he invokes this court's copyright jurisdiction and files

suit against seven of the defendants named in *Bond v. Blum, et al.*, Civil Action No. MJG-01-

2600.  Three of the newly named defendants are partners in the law firms who were defendants in

the earlier case and one of the newly named defendants is counsel for Kenneth Blum Sr., Dudley

Hodgson, and Kenneth Blum Jr.  In addition, the claims against Alan S. Cohn and Robin Cohen,

---

during Alyson Bond's deposition in July of 2001, and Slavin's attorneys intended to use it at a hearing
scheduled for December 10, 2001.  *Id.*  Bond registered a copy of the manuscript with the Copyright
Office in August of 2001, for the sole purpose of preventing further use of manuscript in the custody
proceedings.  *Id.*  On August 29, 2001, he commenced his action for copyright infringement in this court

[4]    Kenneth Blum Sr. and Kenneth Blum Jr are Bond's father-in-law and brother- in- law and are
represented by attorney Gerald P. Martin.

[5]    Dudley Hodgson is a private investigator who was hired by Kenneth Blum Sr. to investigate
plaintiff after Blum received correspondence from plaintiff which he believed to be attempt to extort
money and caused him concern with regard to the safety of his daughter and his grandchildren. *See Bond
v. Blum*, 317 F.3d 385, 390 (4th Cir. 2003).

3

Kenneth Blum Sr.'s son-in-law and daughter, as well as Bond's claims against his mother-in-law Erlene Blum and Miriam Pessin, are inextricably related to *Bond v. Blum, et al.*, Civil Action No. MJG-01-2600.[6]

Plaintiff is estopped from re-litigating his claims. The doctrine of *res judicata* or claim preclusion provides that a final judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based upon the same cause of action. *See Jones v. SEC*, 115 F.3d 173, 1178 (4th Cir. 1997); *Keith v. Aldridge*, 900 F.2d 736, 739 (4th Cir. 1990); *Nash County Bd. of Ed. v. Biltmore Co.*, 640 F.2d 484, 485 (4th Cir. 1981). The doctrine of collateral estoppel precludes the relitigation of issues actually litigated; the matters must have been distinctly placed at issue and directly determined in prior proceedings in which the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate. *See In re: Microsoft Corp. Antitrust Litigation*, 355 F.3d 322, 325-26 (4th Cir. 2004).

The principles of *res judicata* and collateral estoppel apply to this action. *See Allen v. McCurry*, 449 U.S. 90, 105 (1980). Federal law controls the assessment of the preclusive effect of the earlier federal judgment. *See Harnett v. Billman*, 800 F.2d 1308, 1312-13 (4th Cir. 1986). Where, as here, final judgment was entered as to plaintiff's copyright claims; the parties are identical or in privity;[7] and the claims in the two suits are sufficiently identical as to arise out of the same series of transactions and/or could have been filed in the first suit, Bond is precluded from repackaging his adjudicated copy right claims against defendants. *See Meekins v. United*

---

[6]    It is unclear why defendant Rent-A-Wreck of America, Inc. is subject to suit in this case. Bond claims that Rent-A-Wreck paid Dudley Hodgson's salary as an investigator for the Office of the Attorney General.

[7]    Bond cannot avoid the bar of *res judicata* simply by adding new defendants to the second suit. *See Dreyfus v. First Nat'l Bank of Chicago*, 424 F.2d 1171, 1175 (7th Cir. 1970).

*Transportation Union*, 946 F.2d 1054, 1057-58 (4th Cir. 1991); *Keith v. Aldridge*, 900 F.2d at 740.

In addition, Bond levels charges of "racketeering" and fraud with regard to alleged declarations and perjury committed in *Bond v. Blum, et al.*, Civil Action No. MJG-01-2600. After thorough review of the complaint and applicable statute under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), this court finds that Bond's spectacular claims fail to provide a sufficient factual basis for alleging a pattern of "racketeering activity" in order to set out a claim against defendants for civil violation of RICO. Further, his claims of "fraud" go directly to the factual evidence presented in *Bond v. Blum, et al.*, Civil Action No. MJG-01-2600. Bond may not do circuitously what he cannot do directly– re-litigate the factual findings and credibility determinations made in the earlier civil action.

Plaintiff paid the filing fee. Nonetheless, it is well established that a court has broad, inherent power *sua sponte* to dismiss an action, or part of an action, which is frivolous, vexatious, or brought in bad faith. *See Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363-64 (2[d] Cir. 2000) (district courts have the authority to dismiss frivolous complaint *sua sponte*, notwithstanding the payment of the filing fee); *Crowley Cutlery Co. v. United States*, 849 F.2d 273, 277 (7th Cir. 1988) (federal district judge has authority to dismiss a frivolous suit on her own initiative); *Brown v. District Unemployment Compensation Board*, 411 F. Supp 1001 (D.C. 1975) (district court has inherent power to control the judicial process and dismiss frivolous or harassing action *sua sponte*). Therefore, this court has the discretion to dismiss a case at any time, notwithstanding the payment of any filing fee or any portion thereof, if it determines that the action is factually or legally frivolous. The court finds that the instant matter

is subject to dismissal.  A separate order effecting the rulings made in this memorandum is being

entered herewith.

Date _____      _____
                                  J. Frederick Motz
                                  United States District Court

6